UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
                                    :
UNITED STATES OF AMERICA
                                    :
          - against -                           **AMENDED OPINION**
                                    :
LOUIS P. GIGANTE,                               03 Cr. 1321 (DC)
                                    :
                    Defendant.
                                    :
- - - - - - - - - - - - - - - - - -x


**APPEARANCES:**          MICHAEL J. GARCIA, ESQ.
                          United States Attorney for the
                            Southern District of New York
                                By:  Timothy J. Treanor, Esq.
                                     Benjamin Gruenstein, Esq.
                                     Assistant United States Attorneys
                          One St. Andrew's Plaza
                          New York, NY  10007

                          GERALD B. LEFCOURT, P.C.
                          Attorneys for Defendant
                                By:  Gerald B. Lefcourt, Esq.
                                     Sheryl E. Reich, Esq.
                                     Faith Friedman, Esq.
                          148 East 78th Street
                          New York, NY  10021


**CHIN, D.J.**

          In this case, defendant Louis P. Gigante, the operator

of a popular restaurant called "Mulino's" in White Plains, New

York, is charged with making false statements in connection with

a bankruptcy proceeding, fraudulent concealment, and income tax

evasion.  He was first indicted in November 2003, one day before

the statute of limitations was to expire.  Four superseding

indictments were filed over the course of the next twenty-one

months, each adding counts shortly before the applicable statutes

of limitations were to expire.  The initial indictment and each

of the superseding indictments were sealed.  The final
superseding indictment was not unsealed until August 2005, when
Gigante was arrested.  Thus Gigante -- whose whereabouts were
never unknown, who had been aware for several years that he was
under some type of investigation, and who had volunteered to
surrender if a grand jury returned an indictment -- was not
apprised of the charges against him until more than six years
after the last criminal act alleged in the operative indictment,
nearly two years after the earliest of the relevant statutes of
limitations expired, and about six weeks after the last of the
relevant statutes of limitations expired.

The Government contends that the statutes of
limitations were tolled by the sealing of the various indictments
until August 2005, when the unsealing of the final superseding
indictment made the charges public.  Gigante moves to dismiss the
indictment as barred by the statute of limitations, arguing that
the Government has not shown that it had a proper purpose for the
sealing of the indictments.  I agree.  Accordingly, the motion is
granted and the indictments are dismissed.

**BACKGROUND**

**A.    Gigante's Financial Difficulties**

The Gigante saga dates back to February 1992, when the
Internal Revenue Service ("IRS") filed a tax lien against Gigante
for unpaid federal income taxes for the years 1986 through 1990.
Over the next few years the IRS filed more tax liens, and in
November 1998 Gigante commenced a bankruptcy action in the

Southern District of New York for the discharge of his personal debts. In his bankruptcy petition, Gigante acknowledged that he owed the IRS more than $1 million and stated that he had assets totaling just over $3,000 and a yearly income of approximately $67,000. On June 28, 1999, the bankruptcy court entered an order declaring that Gigante's tax debts were dischargeable in bankruptcy.

## B. The Investigation and the Indictments

Some time in 2000, the Government commenced an investigation of Gigante for possible income tax evasion, suspecting that in the bankruptcy proceeding Gigante had deliberately misrepresented his income and assets -- including ownership interests in Mulino's and a limousine business called "Capricorn Limousine Service, Inc." ("Capricorn") -- in an effort to reduce his personal income tax liability.

After three years of investigation, Gigante was indicted for the first time on November 5, 2003. This first indictment contained one count, alleging that on November 6, 1998, Gigante made a false statement in a bankruptcy proceeding. This indictment, which was sealed, was thus filed one day before the statute of limitations on this charge was to expire. See 18 U.S.C. § 3282.

The Government investigation continued, and approximately six weeks later, on December 17, 2003, the grand jury returned a superseding indictment that contained the same count as the previous indictment, and added a count alleging that

on December 22, 1998, Gigante gave false testimony under oath before a United States Trustee in a personal bankruptcy hearing. The statute of limitations on this count would have expired five days later, on December 22, 2003. <u>See</u> 18 U.S.C. § 3282. This superseding indictment was also sealed.

On March 15, 2004, after yet more investigation, the grand jury returned a second superseding indictment, containing the two counts from the previous indictments, plus seven additional counts charging bankruptcy fraud, concealment of assets, and false statements. The statutes of limitations for the crimes charged in the newly added counts had various expiration dates, ranging from June 3, 2004, to June 28, 2004. <u>See</u> 18 U.S.C. §§ 3282, 3284. This superseding indictment was also sealed.

On May 23, 2005, after another year to investigate, the grand jury returned a third superseding indictment, alleging facts substantially similar to the previous indictment but adding more detail and referencing two alleged co-conspirators (who were not indicted). It contained ten counts, including the nine counts from the previous indictment as well as, for the first time, a tax evasion count. This count, unlike the other alleged crimes (which carry a five-year statute of limitations), has a six-year statute of limitations. <u>See</u> 26 U.S.C. § 6531. The statute of limitations on the tax evasion count therefore was to expire on June 28, 2005. This third superseding indictment was also sealed.

Finally, on August 8, 2005, after some ten weeks to investigate Gigante's assets, the grand jury returned yet another superseding indictment, containing no new counts but adding allegations to support the forfeiture of those assets. This final indictment (the "Indictment") was unsealed on August 9, 2005. Gigante was arrested the same day. (Lefcourt Aff. ¶ 17).

Over the course of the five-year investigation the Government interviewed approximately thirty witnesses and collected approximately twenty boxes of documents -- an average of one witness every other month, and one box of documents every three months. The Government represents that the investigation is ongoing and anticipates receiving additional documents in response to subpoenas served, in its words, "long ago." (See Gov't Br. at 5).

## C.  Gigante's Knowledge of the Government's Investigation

During the more than six years between June 28, 1999 (the date of the last alleged criminal act in the Indictment), and August 9, 2005 (the date on which the Indictment was unsealed and Gigante was arrested), Gigante and his attorneys were generally aware that the Government was investigating him. For example, Gigante knew that in December 2000 both Mulino's and Capricorn received grand jury subpoenas. (Lefcourt Aff. ¶ 10). Gigante also knew that grand jury subpoenas had been served upon two banks with which he then did business. (Id.). Gigante's counsel was in contact with both the FBI and the United States Attorney's Office around the time these subpoenas were served in

2000, and in March 2002 Gigante's attorneys spoke with an Assistant United States Attorney about the investigation of Gigante. (Lefcourt Aff. ¶ 11). Gigante's attorneys indicated that while they were unaware of the precise nature of the investigation, they were aware generally that Gigante was being investigated, and they expressed a desire to meet with the Government in an effort to avoid prosecution. (See Greene Reply Aff. ¶ 4; Lefcourt Aff. ¶¶ 10-11). Gigante's counsel also made a practice of notifying the FBI whenever Gigante planned to travel out of the jurisdiction for any reason, with the purpose being to keep the Government apprised of his whereabouts so that he could surrender if he were indicted. (See Greene Reply Aff. ¶ 6).

In early 2004, Gigante was aware that waiters, line chefs, and other employees of Mulino's had received early-morning visits from the FBI, and he also knew that FBI agents attempted to interview his wife. (See Lefcourt Aff. ¶ 15; Greene Reply Aff. ¶ 5). In February 2004, in response to what seemed to be an increased level of Government activity, Gigante's attorney wrote to another Assistant United States Attorney, indicating that "Mr. Gigante has been aware of the government's investigation for some time," and asking that Gigante be allowed to surrender voluntarily if an arrest warrant were issued. (Lefcourt Aff. Ex. J). At this point Gigante was unaware that he had already been indicted in November 2003.

When the Indictment was unsealed and Gigante was arrested on August 9, 2005, Gigante's attorney inquired of the

Government how it intended to proceed, given that none of the alleged criminal activity in the Indictment fell within the applicable statutes of limitations. At that point the Government informed him for the first time that there had been a series of sealed indictments dating back to late 2003. (See Lefcourt Aff. ¶ 18).

**D.**  **The Government's Reasons for Sealing the Indictment**

It appears that the Government's five requests to seal the indictment were made to five different magistrate judges.[1] Moreover, it appears that the Government did not inform any of the magistrate judges of the basis for its request for sealing, and there is nothing in the record to suggest that any magistrate judge was advised that the Government wanted the indictments sealed to toll the statute of limitations. (See 5/9/06 Gov't Letter at 4 n.4 ("[W]e believe that on each occasion the magistrate judge did not request -- and the Government did not provide -- a basis for sealing the indictment.")). Nor does it appear that any record was made of any of these proceedings.[2]

---

[1] In a letter to the Court dated May 17, 2006, counsel for Gigante represents that, with one possible exception, five different magistrate judges were "on duty" on the five different dates that the Government requested the sealing of the various indictments. (5/17/06 Gigante letter at 3 n.1). In the Government's response, dated May 24, 2006, the Government appears not to dispute the possibility that the requests to seal may have been made to five different magistrate judges (or, at the very least, four different magistrate judges), but represents that this was not done intentionally. (5/24/06 Gov't letter at 3).

[2] In its letter to the Court dated May 9, 2006, the Government explained that it believes that no explanation of the basis for the sealing was requested or provided, but stated that

In response to Gigante's motion, the Government has put
forth several reasons for sealing the indictments.  First, the
Government maintains that the sealing of the first three
indictments was justified because putting Gigante on notice of
the fraudulent concealment and false statement charges would have
"compromis[ed] the broader, ongoing tax evasion investigation."
(Gov't Br. at 10; see also 5/9/06 Gov't Letter at 2 ("The
Government did so to preserve the ability to prosecute Gigante
for each of the charged crimes without having to prematurely
conclude and compromise its overarching, broader, related
criminal tax evasion investigation.")).  The Government made a
similar representation at oral argument:

> THE COURT:  Do you have a recollection as to
> why you asked for the original indictment to
> be sealed?
>
> [THE GOVERNMENT]:  Yes, your Honor.  Because
> in the course of going forward with this tax
> investigation, there was a false statement
> count in a sworn proceeding that had a five-
> year statute of limitations. . . . If you
> follow what [defense counsel] insists the
> government should have done, we would at that
> point have had to go completely public with
> an investigation[,] . . . unseal and arrest
> Mr. Gigante.
>
> THE COURT:  You did not want Mr. Gigante to
> know about the tax investigation.

---

it had requested recordings of the relevant proceedings.  (See
5/9/06 Gov't Letter at 4 n.4).  In a response dated May 17, 2006,
counsel for Gigante wrote that he "was advised by the Southern
District Audio Visual Department that no record was kept of these
proceedings." (5/17/06 Gigante letter at 3 n.1).  The Government
has not disputed this assertion in subsequent submissions, and to
date no recordings have been provided.  The Court can only
therefore assume that no such recordings exist.

[THE GOVERNMENT]:  Absolutely not, your
                    Honor.

(5/2/06 Tr. 17-18).

          As an additional justification, the Government has

represented that it "needed additional time to allow the

Department of Justice and the IRS to complete their mandated

internal review of the tax evasion charge, a review process that

could have resulted in a decision not to charge Gigante with tax

evasion."  (5/9/06 Gov't Letter at 2; see also 5/24/06 Gov't

Letter at 3 ("This long and tedious [DOJ/IRS tax] review process

is simply one of the reasons that tax charges have a longer

statute of limitations, and it is one of the reasons the

Government sealed the indictments containing the fraudulent

bankruptcy related charges before obtaining the tax charge.");

id. ("[T]he Government gained nothing from the sealing other than

the additional, but necessary, time to complete the investigative

tasks identified by the Government as its reasons for sealing the

indictment.")).

          For the third and fourth superseding indictments, which

contained the one count of tax evasion, the Government has

provided an additional justification: it needed more time to

conduct an investigation to support the forfeiture of Gigante's

assets.  The Government writes: "The Government obtained a sealed

indictment because the Government was actively investigating

Gigante's then-current assets; was preparing forfeiture

allegations against Gigante to include in the final indictment

. . . ; was preparing a restraining order preventing Gigante from

                                -9-

transferring or diminishing his assets; and was preparing to arrest Gigante."  (5/9/06 Gov't Letter at 8; see also 5/24/06 Gov't Letter at 3-4 (referencing ten-week asset forfeiture investigation conducted between third and fourth superseding indictments); 5/2/06 Tr. at 22 ("Then we took ten weeks to identify the then current assets, get the forfeiture allegations, arrange for the arrest, and in fact we got the asset forfeiture allegations in the final indictment the day before we arrested Mr. Gigante.")).

Finally, the Government argues that it had a general concern that Gigante was a flight risk:  "[A]s with any defendant, the Government had general concerns that, if Gigante had advance[] knowledge of the charges against him before he was arrested, he might evade arrest, flee the jurisdiction, or pose a risk of harm to arresting officers.  These reasons served as adequate justification for keeping the charges against Gigante sealed until his arrest on August 9, 2005."  (Gov't Br. at 20).

## DISCUSSION

Gigante's motion raises several issues.  The principal question -- one of first impression in this Circuit -- is whether the Government's need for additional time to investigate a related and still uncharged crime with a longer statute of limitations is a proper basis for sealing an indictment for crimes that have a shorter statute of limitations.  If it is a proper purpose, the Court must decide whether the amount of time the indictments remained sealed was reasonable, and whether

Gigante is required to show he was prejudiced by the delay. Gigante also argues that the delay violated his rights under the Speedy Trial Act.

## A.   <u>Applicable Law</u>

### 1.   <u>Sealing of Indictments</u>

Federal Rule of Criminal Procedure 6(e)(4) grants a magistrate judge the power to seal an indictment:

> The federal magistrate to whom an indictment is returned may direct that the indictment be kept secret until the defendant is in custody or has been released pending trial.  The clerk must then seal the indictment, and no person may disclose the indictment's existence except as necessary to issue or execute a warrant or summons.

Fed. R. Crim. P. 6(e)(4).

The "'obvious purpose'" of the Rule "'is to prevent the requirement of an indictment from serving as a public notice that would enable the defendant to avoid arrest.'" <u>United States v. Davis</u>, 598 F. Supp. 453, 455 (S.D.N.Y. 1984) (quoting <u>United States v. Muse</u>, 633 F.2d 1041, 1043 (2d Cir. 1980)).  Though the rule states that an indictment may be sealed "until the defendant is in custody," the Second Circuit has held that the sealing of an indictment is justified by "the exercise of sound discretion in the public interest." <u>United States v. Srulowitz</u>, 819 F.2d 37, 40 (2d Cir. 1987).  Accordingly, "various prosecutorial objectives, including, but not limited to, the facilitation of arrest," will justify the sealing. <u>Id.</u> (citing <u>United States v. Southland Corp.</u>, 760 F.2d 1366, 1379-80 (2d Cir. 1985)).

The decision of a magistrate to seal an indictment is entitled to considerable deference.  As the Second Circuit has explained,

> sealing . . . is but a ministerial act, and it is wholly within the discretion of the Magistrate whether to require the prosecutor to justify a request to seal . . . . A simple request for secrecy by the prosecutor . . . is sufficient to invoke the Magistrate's authority to direct sealing.  Of course, "great deference" is to be accorded to the discretion of the Magistrate in the exercise of that authority.

Id. at 41 (citation omitted); see also Southland, 760 F.2d at 1380 (Friendly, J.) ("This is a point on which great deference should be accorded to the discretion of the magistrate, at least in the absence of any evidence of substantial prejudice to the defendant.  The Government should be able, except in the most extraordinary cases, to rely on that decision rather than risk dismissal of an indictment, the sealing of which it might have been willing to forego.").

## 2. **The Tolling of Statutes of Limitations**

In the criminal context, statutes of limitations require that an indictment be "found" within a certain period of time, and an indictment ordinarily is "found" when it is returned by the grand jury and filed.  See Srulowitz, 819 F.2d at 40.  A superseding indictment that supplants a pending indictment relates back to the original indictment and is therefore timely as long as it does not materially broaden or substantially amend the charges.  See United States v. Salmonese, 352 F.3d 608, 622

-12-

(2d Cir. 2003).  An indictment that is sealed generally tolls the statute of limitations.  Accordingly, when a timely filed sealed superseding indictment is not unsealed until after the expiration of the statute of limitations, the statute is ordinarily not a bar to prosecution, as the statute is generally tolled as of the date of first filing.  Srulowitz, 819 F.2d at 40 (citations omitted).

There are exceptions to this rule.  If, for example, the Government lacks a proper purpose in sealing the indictment, the indictment is considered to be found upon the date of its unsealing.  See United States v. Deglomini, 111 F. Supp. 2d 198, 200 (E.D.N.Y. 2000) (citing Srulowitz, 819 F.2d at 40).  When, as here, a defendant challenges the decision to seal an indictment after it has been unsealed, the burden is on the Government to establish legitimate reasons for sealing the indictment. Srulowitz, 819 F.2d at 41 ("[T]he government, if challenged, must demonstrate legitimate prosecutorial purposes for the secrecy of the indictment.").  If the Government is unable to justify the sealing of the indictment, the expiration of the limitations period prior to unsealing would result in dismissal of the indictment, as it would in any case in which an indictment were untimely.  Deglomini, 111 F. Supp. 2d at 200 (citing United States v. Slochowsky, 575 F. Supp. 1562, 1567 (E.D.N.Y. 1983)).

Even if the Government has a legitimate prosecutorial purpose for sealing an indictment, the time period in which the indictment may remain sealed is not boundless.  Id.  Rather, the

Government is required to unseal the indictment "as soon as its legitimate need for delay has been satisfied." Id. (quoting United States v. Watson, 599 F.2d 1149, 1154 (2d Cir.), amended on reh'g by 690 F.2d 15 (2d Cir. 1979), modified en banc sub nom. United States v. Muse, 633 F.2d 1041 (2d Cir. 1980)). This policy furthers the public's interest in prompt investigation of cases, as well as the interest in avoiding the "inevitable prejudice to the defendant occasioned by the delay." Watson, 599 F.2d at 1154. It is an open question in this Circuit whether a defendant is required to prove actual prejudice to prevail on a statute of limitations motion when the Government has unreasonably delayed the unsealing, or whether prejudice is simply presumed and the indictment should be dismissed. See Deglomini, 111 F. Supp. 2d at 201.

### 3.  Relevant Case Law

As there are no Second Circuit cases directly on point that address the issues presented here, the parties have directed the Court to various authorities from other circuits to support their respective positions.[3]  The Government relies on United

---

[3]     The Court is not aware of any case in this Circuit that addresses the precise questions presented in this case.  In Srulowitz, for example, there was a factual dispute as to whether the defendant's whereabouts were known at the time of the sealing, and the Second Circuit held that there is no requirement that a record be made of the proceedings before a magistrate that culminate in the sealing of the indictment.  819 F.2d at 41.  In Southland, Judge Friendly explained only that various prosecutorial objectives may justify the sealing of an indictment, but did not address the question of whether the Government may seal an indictment simply because it seeks to gain more time to complete its investigation.  760 F.2d at 1380.

States v. Edwards, 777 F.2d 644 (11th Cir. 1985). There, an indictment containing four counts of drug-related charges was brought and sealed four days prior to the expiration of the statute of limitations, and a superseding indictment adding tax evasion charges was brought two weeks later, after the expiration of the statute of limitations on the four drug counts. Id. at 646-47. The defendants were arrested and the indictment was unsealed shortly thereafter. Id. The magistrate judge who ordered the sealing was informed by the prosecution that the sole reason for filing and sealing the initial indictment was to toll the statute of limitations. Id. at 648. The magistrate expressed concern about this justification and suggested that the proper procedure would have been to arrest the defendants on the original indictment and later supersede that indictment to add tax-related counts, but nonetheless granted the motion to seal the indictment. Id.

Under those circumstances, the Eleventh Circuit followed the reasoning of Judge Friendly in Southland and "accord[ed] great deference to the discretion of the magistrate." Id. In particular, the Eleventh Circuit noted Judge Friendly's admonition that "[t]he Government should be able, except in the most extraordinary cases, to rely on that decision rather than

---

Watson stands for the proposition that the Government may seal the indictment as to one defendant, the whereabouts of whom are known, to avoid tipping off other defendants, the whereabouts of whom are unknown, at least when the defendant is unable to demonstrate prejudice as a result of the delay. 599 F.2d at 1153-54.

risk dismissal of an indictment, the sealing of which it might have been willing to forego." Id. (quoting Southland, 760 F.2d at 1380).

The Government also cites several other cases, of which United States v. Wright, 343 F.3d 849 (6th Cir. 2003), is the most recent and a good representative. There, the Government represented that it needed to keep the indictment sealed to protect the identity of a confidential informant in an unrelated investigation that ultimately led to the indictment and conviction of nineteen individuals on various drug and racketeering charges. Id. at 858. Under those circumstances, the Sixth Circuit held that "the need to avoid compromising an ongoing investigation" may justify the sealing of an indictment. Id. Wright therefore stands for the proposition that the Government may seal an indictment when secrecy is necessary to protect a confidential informant in an unrelated investigation.

Gigante, on the other hand, directs the Court to United States v. Davis, in which the court suggested in dicta that what occurred here would be impermissible: "The Government's real reason for sealing the indictment, Davis suggests, was to permit completion of a grand jury investigation into another and more elaborate fraudulent scheme . . . . If Davis had accurately identified the reason why the prosecutor sealed the indictment, there would be authority for dismissal." 598 F. Supp. 453, 455 (S.D.N.Y. 1984) (citing United States v. Heckler, 428 F. Supp. 269, 269 (S.D.N.Y. 1976)). But the court ultimately denied the

defendant's motion to dismiss because it found other legitimate reasons for the sealing.  Id.

Gigante also relies on United States v. Rogers, 781 F. Supp. 1181 (S.D. Miss. 1991).  There, the defendant was charged with three counts of bribery in a sealed indictment filed shortly before the statute of limitations was to expire.  Id. at 1183. The indictment remained sealed for a thirteen-month period "so that [the Government] could postpone prosecution on the bribery charges while it pursued an income tax investigation which it hoped would result in an indictment that could be joined with the instant bribery indictment."  Id. at 1187.  Citing both Srulowitz and Southland, the court found that although various legitimate prosecutorial purposes will justify the sealing of an indictment, pursuing a related income tax investigation was not one of them. Id. at 1190-91.  The court explained:

> In the case at bar, there was no legitimate
> prosecutorial need for sealing the
> indictment.  The government has not
> demonstrated that the sealing was necessary
> in order to maintain secrecy.  The government
> does not claim that the defendant could not
> be located or was likely to flee.  Moreover,
> the evidence is uncontroverted that the
> defendant was aware of the bribery
> investigation as early as 1988 and of the
> income tax investigation at least by April
> 1989.  No evidence has been presented to
> suggest that advising the defendant of the
> fact of the bribery indictment would have
> adversely affected the government tax
> investigation.  The simple fact is that the
> government wanted to pursue its investigation
> into what it perceived to be income tax
> irregularities with the hope of ultimately
> indicting defendant on those additional
> charges and joining all the charges for trial
> . . . . In short, this court cannot agree

-17-

that a unilateral extension by the government
of the limitations period under the guise of
"gathering evidence" would be a "legitimate
prosecutorial objective" in view of the
length of the delay.

Id. at 1191.

## B.   Application

In essence, the Government puts forth three reasons for
sealing the indictments: (1) it needed to keep the first three
indictments secret to avoid compromising the tax-evasion
investigation; (2) it had a general concern that Gigante
presented a flight risk and/or a risk to the safety of arresting
officers; and (3) it needed more time to complete its ongoing
investigations.

The first two reasons are easily dismissed and thus I
discuss them together.  I then turn to the third reason, which is
at the heart of the principal legal issue before the Court.

### 1.   Secrecy and Flight Risk

The Government's assertion that it needed to maintain
secrecy rings hollow in light of the fact that, as detailed
above, there was nothing "secret" about the investigation:
Gigante was well aware for nearly the entire duration of the
five-year investigation that he was being investigated, and his
counsel was in frequent contact with the Government about the
investigation.  Indeed, as noted above, Gigante's counsel wrote
to the Government in February 2004 -- eighteen months before the
Indictment was finally unsealed -- and stated that "Mr. Gigante
has been aware of the government's investigation for some time."

Nor is there any suggestion in the record of the involvement of any confidential informants whose identities needed to be protected.  I thus reject the notion that maintaining secrecy was somehow crucial to avoid compromising the investigation.

The Government's contention that Gigante posed a flight risk or a risk to the safety of arresting officers is similarly not substantiated.  Gigante's whereabouts were never unknown, he repeatedly volunteered to meet with the Government prior to being indicted, he asked that he be allowed to surrender if he were indicted rather than being arrested on the street or in front of his children, and he notified the FBI when he traveled outside of the jurisdiction even before he was aware that he had been indicted.  Moreover, when he finally was arrested, the federal agents who arrived at his home took him into custody off of the premises so his children did not witness the arrest, all the while assuring him that bail was not an issue and he would be home later that evening.  They did not draw their weapons or attempt to restrain him.[4]

Thus, the Government's motivation for sealing the indictments could not have been secrecy, fear of flight, or safety of the arresting officers, and the Court can only reasonably conclude that the indictments were sealed only because

_____

[4]     Gigante makes these representations about the details of his arrest in one of his briefs in support of his motion to dismiss.  (See Gigante Reply Br. at 13-14).  These details have not been contradicted either during oral argument or in the several submissions the Court has received from the Government since then.

the Government sought to toll the statute of limitations while pursuing a related investigation.

## 2.   **Need for Additional Time**

The Government contends that it was justified in sealing the first three indictments solely to save the statute of limitations because it should not have been forced to choose between truncating its ongoing tax-evasion investigation and foregoing charges on related crimes, the statute of limitations on which was about to expire.  Gigante argues that filing an indictment only to save the statute of limitations while pursuing a broader investigation is not a legitimate purpose and eviscerates the purpose for having a statute of limitations at all.

Gigante has the better of the argument.  Whatever the legitimate prosecutorial purposes are that justify the sealing of an indictment, surely they do not include the need for additional time to decide whether to bring an additional charge.  Such reasoning would radically undermine what the Second Circuit has identified as one of the primary purposes behind having a statute of limitations at all: "encouraging prompt investigation of criminal cases."  Watson, 599 F.2d at 1154; see also Toussie v. United States, 397 U.S. 112, 114-15 (1970) ("The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time . . . . Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal

activity."); United States v. Marion, 404 U.S. 307, 322 n.14 ("[C]riminal statutes of limitations are to be liberally interpreted in favor of repose.").

Thus, it simply cannot be the case that the Government's desire for more time in which to complete its investigation of related charges is a legitimate prosecutorial reason to seal the indictment. The existence of a five-year statute of limitations would have little or no meaning if the Government could extend it, essentially unilaterally, merely because it wanted more time to investigate a potential related charge. The Government would be able to file a sealed indictment whenever more time for investigation might strengthen its case, and no person under investigation would ever have repose, as he could never be certain that he had not been indicted months or even years earlier. Indeed, as the Government candidly admits, it was entirely possible that the review by the Department of Justice and IRS could have resulted in a decision not to bring a tax evasion charge at all. In that case, the Government, if it had its way, would have been permitted to proceed with the prosecution of the other charges while presumably using information it had gleaned during an investigation that continued after the statute of limitations had expired, while evidence that may have been helpful to Gigante grew stale with the passage of time. This is especially true in this case, where tax evasion was not charged until the third superseding indictment, on May 25, 2005, more than sixteen months after the statute of

limitations on the first of the false statement charges expired and, indeed, nearly seven years after the first false statement was allegedly made.

The Government argues that <u>Wright</u>, <u>Edwards</u>, and the other authorities cited in its papers support a contrary holding. I disagree. Unlike in <u>Edwards</u>, the magistrate judges here were never told why the Government wanted the indictment sealed. There is therefore no decision of a magistrate judge to which this Court can defer. In other words, no magistrate judge ever decided that tolling the statute of limitations was a legitimate prosecutorial purpose; it was the Government that decided that this purpose would qualify as a legitimate reason without ever informing a magistrate judge or anyone else of that decision, and therefore the Government never relied on the decision of any magistrate judge. The concern expressed in <u>Southland</u> that the Government is entitled to rely on the decision of a magistrate judge is thus inapplicable, as it is likely that the five magistrate judges who authorized sealing in this case did so for the usual reason -- they assumed it was necessary to prevent the flight of the defendant before he was placed in custody. <u>See</u> <u>United States v. Maroun</u>, 699 F. Supp. 5, 7 (D. Mass. 1988) ("[W]hen a request for sealing is made without explanation, it is more than mere silence . . . . [I]t is an implicit representation that the request is being made for the ordinary purpose of preventing the flight of the defendant before he can be apprehended.").

Wright is also distinguishable. There, the Government demonstrated that secrecy was necessary to protect a confidential informant. 343 F.3d at 858. It does not logically follow that the Government is equally entitled to seal an indictment and thereby extend the time in which to investigate when secrecy is not an issue and, in fact, the defendant's whereabouts are known and he is well aware that he is being investigated.

Finally, the Government contends that it was justified in sealing the third superseding indictment because it needed more time to prepare the forfeiture allegations that eventually made their way into the fourth superseding indictment. I reject this justification for the same reasons stated above. Put simply, 26 U.S.C. § 6531 grants the Government six years in which to conduct an investigation and indict the defendant, not six years and a few extra weeks in which to conduct a forfeiture investigation. Notably, the Government argues that it was justified in delaying the unsealing of the false statement counts because they were part of the same investigation as the tax evasion count, and then switches gears and argues that it was entitled to more time on the tax evasion count because the asset forfeiture investigation "was substantially different from" the tax evasion investigation. (See 5/9/06 Gov't Letter at 8).

The Government cannot have it both ways; either the entire investigation -- which admittedly began in 2000, more than five years before the statute of limitations on tax evasion was to expire -- was part of one package, or it was not. The

-23-

Government is not permitted to effectively extend the statute of limitations so that it may conduct an investigation at a leisurely pace by picking and choosing which parts of its investigation it considers integral.

Furthermore, even if I were to accept the argument that an ongoing investigation of the tax evasion charge is a legitimate prosecutorial purpose, I would find that the length of time between the sealing and the unsealing -- nearly two years, for one of the false statement charges -- was a presumptively unreasonable amount of time in which to complete the investigation for one count of tax evasion.  See, e.g., Watson, 599 F.2d at 1154 ("We believe that when a sealed indictment has tolled the statute of limitations, the policy of repose underlying the statute demands that the Government unseal the indictment as soon as its legitimate need for delay has been satisfied."); id. at 1155 ("In light of th[e] strong policy of notifying criminal defendants of the charges against them so that they may prepare a defense, the extension of the statutory limitations period . . . must be confined to reasonable limits. This standard permits an extension only to the degree necessary to accommodate the prosecutorial interests that the sealing of an indictment legitimately furthers."); Heckler, 428 F. Supp. at 272 ("When the defendants are available the government may not seal an indictment for more than a reasonable time after the statute of limitations has expired.  A period of more than twelve months is not reasonable.") (emphasis added); Deglomini, 111 F. Supp. 2d

at 200 (dismissing indictment because fourteen months between sealing and unsealing was unreasonable).

Apparently, the practice in this District is for the Government not to explain its request for the sealing of an indictment, and for the magistrate judges to routinely grant these requests without asking for an explanation.  (See 5/24/06 Gov't Letter at 3 (explaining that it is "the practice in this District . . . to seal indictments at the request of the Government without conducting an inquiry as to the basis for sealing.")).  The practice is troubling.  While magistrate judges have broad discretion in this respect, they still must exercise that discretion to determine that indeed a legitimate prosecutorial purpose exists for sealing an indictment or, as in this case, for continuing to keep multiple, successive indictments sealed for nearly two years.  See Hudson v. Parker, 156 U.S. 277, 288 (1895) (holding that writ of mandamus may issue where district judge "declines to exercise his discretion, or to act at all, when it is his duty to do so"); see also Mapp v. Reno, 241 F.3d 221, 229 n.12 (2d Cir. 2001) (district court not required to defer to discretion of government agency when agency never exercised its discretion); Nichols v. Prudential Life Ins. Co., 406 F.3d 98, 109 (2d Cir. 2005) (inaction is not valid exercise of discretion).  The magistrate judge's decision to seal or not seal will be accorded great deference, but the decision must be the product of the magistrate judge's exercise of discretion, based not just on assumptions but on an actual

explanation from the Government of its need for sealing.

Even assuming the Government need not present a reason to a magistrate judge to justify sealing an indictment, that does not mean that the Government may have no reason, or that its reason can simply be that it needs more time. To hold otherwise would be to render the statute of limitations in criminal cases meaningless. Because I find that the Government has not met its burden of establishing that it had a proper purpose for sealing the indictments in the first place, I need not consider whether Gigante must show that he suffered prejudice from the delay in unsealing. I also decline to decide whether Gigante's rights under the Speedy Trial Act have been violated.

## CONCLUSION

Defendant's motion to dismiss the indictments is granted. The indictments are dismissed, with prejudice, and judgment has been entered accordingly. This amended opinion supersedes the opinion dated June 15, 2006.

SO ORDERED.

Dated:    New York, New York
         July 5, 2006

DENNY CHIN
United States District Judge

-26-